Next case is 06-1316, the opinion of the non-corporation, the Sunside Corporation. Okay, so good morning, look evidence in this case. This is a motion for summary judgment graining by the district court regarding written description and new man. The starting place for our analysis of the evidence of record of the non-human is the markman claim instruction, which is court gave to the single issue, which is the single element of the claim, which is at issue in this case. That element is a portable body sized to be hand held. The court, the district court below construed that to be a body that is sized such that it can be held by hand, not in hand, as some site has suggested in its brief, and so that it can be hand held, move from one location to another. Let's look at the evidence that- The claim construction was done without looking at the description issue. The claim construction was done assuming that the claim was valid. We have to assume, and I believe the court did apply that same construction when it held that there was new matter in the case. But even if it isn't, Your Honor, it really doesn't make that much difference as far as the evidence is concerned in this case. Because as far as whether or not there's new matter, the markman description is not that much different from the exact language in element A, a portable body sized to be hand held. Now, the first evidence of record of non-movement is the actions and the words of the examiner himself, not on one occasion, but on four separate occasions, actually five, I want to address that in just a moment. He had to look at the claims themselves, and he had to look at the amendment to the specification, which was entered. That's two in this case. Does it really matter what the examiner decided? Don't we have to look to see whether or not the original specification contains language that suggests that the apparatus would be hand-sized? Judge White, this court has stated that an examiner is one skilled in the art. And that his actions constitute evidence. I'd like to call, in response to your question, Judge Brockwhite, I'd like to call the court's attention to a case that addresses this very specific point, perhaps better than in the cases that we've cited in our brief. It's Finnish Engineering Company versus Zerpa. 806, Fed 2nd, 1041. And that's a case that involved invalidity because of prior art. This court held in a summary judgment procedure that the actions of the examiner and the words of the examiner must be considered as evidence. So if the examiner expresses, in other words, are you basically saying because the examiner issued or allowed the claim that there's necessarily a question of fact as to written description? I believe that the evidence in this case is not necessarily just that he did it, but that he did it four times. And in fact, your honor, he did it five times. Okay, so the examiner does that five times? Is that evidence on which to deny himself? I believe it is, your honor. But the fact that he repeatedly did it, repeatedly did it. So you can never have summary judgment on validity questions? Because in all validity questions, we assume that the examiner's case is valid. I'm not certain about validity. But as far as new matter is concerned, we could only find one case in which this court affirmed a motion for summary judgment, granted, on the issue of new matter. That was the TurboCare case. And in that case, your honor, the reason why this court affirmed it was because the evidence of the appellant, the evidence that the patentee wrote, his expert report, his testimony was conclusory. That's the only case we can find. Now, the fifth, I want to point out the fifth time that the examiner did this. He did it in this case in May of 2000, when the amendment was entered. But there was a second amendment that was made, not discussed in our brief, but discussed in Sonosot's brief at page 8, note number 1, in which, on November 14, 2000, the examiner considered another amendment, which was entered by the applicant, containing the exact same wording in a claim, and he allowed it again. So the examiner wasn't asleep at the wheel. And this court— Well, I'm just going to go quickly. You're saying it's sort of a matter of law that if the examiner makes a mistake, the examiner, you know, if he does one thing, and then obviously he's going to consistently do that throughout, so he repeats the same mistake twice would preclude him from granting summary judgment because each of those can pile on each other and establish that the patentee— I'm saying, Judge Prost, that at the summary judgment level, this court has specifically stated that the examiner's actions constitute evidence, and it doesn't go, as Sonosot has argued, to the presumption of validity. I'm saying that in this case, which is unique, I think, that the examiner looked at these things not just once, but five separate times. I think the number, the actions of the examiner, the numbers that the examiner did, is certainly evidence that he considered it as before. Figure 2 of the patent was, of course, performed. We know that the poll patent was performed because it's made a record in the patent set. I'd be much more interested in what evidence you think there is besides the examiner's repeated words. Certainly. The poll patent, the incorporation of the poll patent just incorporates the patent. Don't you have to point out what is material about what you're incorporating? No, Judge White, because the inventor did the incorporation by reference precisely correct. He stated that the entire patent was incorporated by reference. And if you look at the MPDP proceedings on that and the requirements and the cases of this court, he needs to do nothing more. The main case that's on the side of science with respect to that very issue, Judge White, is a case in which the applicant had a cross-reference to related applications, I believe. And that's all he said. He didn't say that that application was being incorporated or wasn't being incorporated. There's no requirement that the applicant do any more than exactly what Mr. Radama, the inventor in this case, did. Does the poll patent have an ultrasonography generator? It is not related to an ultrasonography generator. It is related to a therapeutic device. But that's irrelevant, Judge White. And let me explain why. Because the element at issue in this case is a portable body that's sized to be handheld. That's the only element that the Sonocyte raised at the district court level as having been unsupported by new matter. The ultrasonography generator recital comes in in each of the claims at issue in element B. So all we're looking at is a portable body here. And the poll does show that. If you look at page 13 of the appendix, Your Honor, figure 1 of this, it's item number 14. And we can see, even a man on the street, much less one still in New York, can see the size of this woman, can see the body here that they're working on here, and can see this element 14. There is evidence in the case, and we've cited it. Mr. Rodano specifically said that that device there satisfies precisely element A of the claim. That is some evidence. Dr. Evans will testify to that. So I think you can look at those and see that it's not unreasonable for a juror or anyone else to see that that can be held by hand. Not that it's maybe not in your hand. The portable body in the patent includes the size to be hand-held, which includes the generator, doesn't it? Because that's part of the apparatus. It does, but that has nothing to do with the element at issue, a portable body. That's got a portable body in it, and it certainly is relevant prior art and is not non-analogous. We know that because the examiner has cited it specifically in the patent. So it does have a body, and it's a similar device. The only difference between this device and an ultrasound, and this being a device which is for therapeutic, it only sends a signal out, whereas in an ultrasonography generator in the claim, an element B, not element A, that's before this court, it sends a signal and receives it back. That's exactly how the police used to go about in monitoring all of us to see if we're speeding or not. What has to be hand-held or hand-sized is your apparatus that includes the generator. That is true. Doesn't the first sentence of the description of the perverted embodiment comprise an ultrasound generator and a portable housing? Doesn't that suggest that the two together aren't hand-sized? No, it doesn't, Judge White, because there are several embodiments in these disclosures that ultimately evolve into other patents that were issued to the inventor in this case. These specific claims in this patent go to a device that is strictly for diagnostic purposes. In the entire concept or disclosure in this invention, a perverted embodiment uses the device for erectile dysfunctionality by first therapeutically sending in an ultrasound signal. Then the device is switched so that you can measure blood flow from that. It is precisely that aspect of the invention that is the subject of this patent, not the therapeutic aspect, but the diagnostic. Yes, Your Honor. Thank you very much. Good morning, Your Honors. My name is Paul Krieger, representing SoSite in this case. Mr. Eric Hawes and Lucas Elliott on the brief. Ms. Kathy Sorrell-Smith, General Counsel for SoSite is also here. Neutrino would like to pretend that this is a case about nothing more than a portable housing. There's a lot more in this case. It's about whether new matter has been added to the patent that is involved in this lawsuit. All you have to do is read the O2-1 patent to see what new matter has been added. If you look at column 6, the record of A00489, you'll see that the new matter is described as shown in figure 2. The ultrasonography generator unit 30 is sized to be grasped or held in the user's hand. That's not only a housing that's empty, that has no electronics in it. That is a very sophisticated electronic device made up of semiconductors, made up of wiring, made up of circuit boards. And as the record shows in Mr. Quisgard's declaration, it costs SoSite millions of dollars to develop this type of technology to make it small enough to be hand-held. Now, why are we here? We're here because Mr. Verdano, who is described in the briefs as a well-versed patent attorney and is a self-proclaimed expert in patent law, had a patent that was directed to curing erectile dysfunction, period. There was nothing in the original claims where he tried to go after something that was portable or sized to be hand-held. So he had a two patents issue. He had a pending patent application. He then found out about SoSite's device, our client's device, the first one on the market that was truly portable and sized to be hand-held. What did he do? He had a rejection from the patent office, and he has even admitted that he looked at our device and he drafted claims that recovered it. Pardon me, Your Honor? There's nothing wrong with that except the way he did it. Now, being a well-versed patent attorney, he certainly had no problem describing the pistol grip as being sized to be hand-held when he drafted the patent application. But he has two other elements here, the ultrasound generator 9 and the ultrasonography generator 30. And both of those elements are shown in the drawings as being generic line drawings. No designation as to size at all. You can see it right here in Figure 2 of the patent. When he wanted to make something that was indicating a size, he had the pistol grip. But here we have two black boxes. But that, I mean, I understand, I appreciate that you have a lot of things to point to and a lot of evidence in the record that turns your direction. But for me, that's really not the issue before us today. The question on summary judgment is whether or not there was enough evidence in the record to at least, with all inferences going to the other side, that at least there was some question of fact with respect to whether or not this was meant or not. So the other side pointed to several things, the examiner's statements, Dr. Evans's declaration, the whole patent. So maybe you can address yourself to those issues, just to tell us why, in your view, having that information in the record, those facts in the record, were not sufficient to raise an established question. Going to the examiner's allowance of these claims of not objecting to the new matter, if this case had gone to trial, we had an inequitable conduct fraud issue reflected in the record in our pretrial order. And when the examiner received this amendment, it was done in such a way that the new matter was hidden. It was... What's the symbolism here? Is it the fact that the examiner makes a decision? Is that evidence? No, it's not. It's a procedural device saying that there is a presumption of validity that has to be overcome by clear and convincing evidence. And what about the case cited by your opponent, suggesting that there is some evidence? Well, there is a statement by the examiner in that case, where the examiner compared one product versus another product and said they're unalike. And the court, as I read this case, we saw it for the first time this morning, as I read that case, there was no evidence or any argument presented as to why this difference that the examiner saw was not a difference. So the court held that that was not dealt with and there was an issue of fact. That is not the situation in this case. In this case, this new matter is added. The examiner allowed it. He has a presumption of validity. Not a heightened presumption of validity, as the Brooktree case talked about, but as in advanced display in an AK, we cite in our brief, it's a presumption of validity that we have to overcome. And we believe we've done it. Now, getting to your point, Your Honor, about the evidence. There is a lot of evidence in this case that has to be discussed, and I want to go through it piece by piece. First, let's talk about Dr. Evans, or Professor Evans. Professor Evans came in with a declaration. And he said, well, I look at this drawing, this figure two, and I see the pole fact, and we'll deal with pole in a minute. And because pole shows an ultrasound generator, different from the ultrasonography generator, I see that the knobs are packed closer in this ultrasonography generator. Therefore, I think this ultrasonography generator is smaller than the ultrasound generator without ever reaching a conclusion providing any basis as to the size of the ultrasound generator in the O2-1 pack. That declaration of Dr. Evans is conclusory at best. And if you look at what his conclusions were, he said, with the tighter packing of the knobs in 30, that conveys an impression of a device smaller. He talks about these individual reasons that he gave for finding there's something the size of the handheld individually lend support. And then he concluded that these reasons could not exclude such an interpretation of the ultrasonography generator 30 being the size of the handheld. These are equivocal at best, based on, with no reasonable basis. The judge properly did not consider the Evans deposition or declaration in this case because he never met the legal standard of having anything that might be argued to support that the size of the handheld was in there. The second bit of evidence... We believe the legal standard, Your Honor, as we've argued in our briefs, is necessarily comprehends what is being claimed. Now, there's an argument made by the other side that the legal standard is truly whether or not something is reasonably conveyed to one with ordinary skill in the art. I think the answer to this question is high in view of Boone, which we cited in our brief, which they talk about. The legal standard involves you either must expressly disclose something that supports this extra limitation, or you have to show that it's inherently disclosed. There is nothing expressly disclosed in the Rodato 021 patent or in any of the documents that are referenced. Therefore, you go and look at whether or not it's necessarily comprehended by the disclosure in the original application. And I believe that if you look at that test, which the district judge, we believe, correctly applied, that Mr. Evans, Professor Evans, does not meet that test. Then you look at Dr. Beal. Dr. Beal says that if you look at the width of the ultrasonography generator 30 relative to the pistol grip, that tells him that though the ultrasonography generator 30 is slightly greater, but his size would be handheld. And here is his non-equivalent answer. He says, this creates the impression that this instrument is light enough to be handheld and portable. Creates the impression. That certainly doesn't meet the legal standard of being necessarily comprehended. Now, Mr. Rodato himself, the only evidence in the record is that Mr. Rodato looked at the ultrasound generator 9 and held that it was sized to be handheld. He never concluded that the ultrasonography generator was sized to be handheld. And even ignoring the fact that this is a self-serving declaration, that is not sufficient in order to show that the ultrasonography generator 30 is necessarily comprehended as being sized to be handheld. Therefore, all three of these pieces of evidence we submit are improper and were improperly excluded by the district court. Without fantasizing as to what's going on, what about the use of the hot tub comment? Well, the hot tub was an issue we raised in our initial motion. It was never responded to by the other side. We think there's a clear way of the hot tub issue. As a matter of fact, if you look at, and that was raised later, and if you look at the case of Malacca versus Garber, it's a Fifth Circuit case decided in 2003 at 353 Fed Third 393. That case held that because Brinconi's did not identify any evidence of damages in the summary judgment response, the evidence was not properly before the district court and will not be considered here. They never responded to that argument. Therefore, our position is it's a waiver. And anyway, if you look at Dr. Evans' testimony or Dr. Evans' declaration about the hot tub, the best he could say is that the use in a hot tub tends to imply a small portable device in itself. This does not imply that it is sized to be handheld. He equivocated once again and couldn't even conclude that just some passing reference to a hot tub might have provided support for this limitation. So we believe that there's no evidence in the record that can be considered on the hot tub issue. On Poll, the district court dealt with Poll. And I think if you look in our briefs, we cited the advanced display case as to whether something can be, how something is properly incorporated by reference. And if you look at the O2-1 patent, the O2-1 patent says only that electrical and or electronic circuitry suitable for connecting ultrasound transmitters to an ultrasound generator are described in Poll. There's no indication as to size. There's no indication as to anything other than this electronic circuitry. So we believe that Poll was not properly incorporated by reference. We also have another case, the Modine case, where at 18 Fed Appendix 857, which says that Modine's attempt to rely on the incorporation of the 3-1-1 patent by reference to support the expanded lower limit is unavailable because it failed to cite the patent in a way that made clear that the range was effectively part of the application. There was absolutely no indication that Poll was being cited for this notion of the size of the handheld. Our position is that these arguments were all contrived after the fact, after Mr. Rigano saw the so-to-cite product, added the new matter to the application, and then attempted to have claims go undercover. Now, Mr. Norville said he only knows of one case where summary judgment of invalidity was confirmed in this court. I think he said written description of invalidity. Well, OK, written description of invalidity. Well, we have a number of cases. Besides TurboCare, you have Lockwood versus American Airlines. You have New Railhead versus Vermeer. You have Lizard Tech versus Earth Resources Mapping. And you have Go Medical versus InMed, three of which are relatively recent cases. So it's not uncommon for summary judgment of invalidity based on either a written description or new matter to be affirmed. You just have to look at the evidence of record. And our position is the district court properly did not give evidentiary effect to the Beal, Evans, and Rigano testimony and declarations. And it's found properly that Poll, which only disclosed as an ultrasound generator without any connection made between the ultrasound generator and the ultrasonography generator, that is claimed. Now, what we have here is Mr. Rigano. Mr. Rigano hasn't invented any of the single elements in this claim. If you look at all of the elements of claim eight, the housing, the ultrasonography generator, the transducer, the array of emitters, Mr. Rigano didn't invent any of that. All of the electronics he used, he incorporated by reference. He didn't even invent the combination. The only thing that he claimed to invent was putting the ultrasonography generator in there. Thank you. Our constitution, with respect to the provisions of the Patent Act, is silent with respect to whether or not you treat attorneys differently than you do any other persons. Mr. Rigano also is a nuclear engineer, by the way. Let me ask you a question. Other than, or in addition to, the examiner's decisions, the political size that's been talked about from the drawings, and the incorporation of the whole patent, what other evidence is there that suggests that it's ancillary? What we have for witnesses, Mr. Rigano testified that the device and pole satisfied the element A specifically. But he and the other experts relied on the drawings and the pole patent, right? That is correct. And the other place in the specification is the discussion about where it can be used, and that is in an electric conductive environment, such as a hot tub or a swimming pool. It was in the record, and it was in evidence before the district court will have to assume that he looked at all of the evidence in the law. There's a third case law that you can't expect the district judge to go rummaging through all the documents to find a question of fact. It's got to be some way of referencing. Judge White, the evidence, it was very clearly before him in attachments to our response. And the law is also presumed that the district court did review and consider the entire summary judgment record. Just because we didn't discuss it in our brief doesn't mean it wasn't performed. The evidence was specifically, and we did point it out in our response to the summary judgment about what Dr. Evans said and about the possible use in the hot tub and what Mr. Rodano said. I'd also like to- One more guy, I think we have it. Thank you, your honors.